Our next case this morning is number 23-1430 MPG West, LLC v. Secretary of Defense May it please the Court, my name is Yuki Haraguchi on behalf of the appellant MPG West. Your Honors, we're here today asking this Court to reverse the decision of the Armed Services Board of Contract Appeals that decided that the Defense Commissary Agency, DECA, did not breach any of its requirements or any of its duties under a requirements-type contract with MPG West. I think, Your Honors, that this case more broadly asks questions about to what extent the government can force an ill-conceived contract on a contractor to that contractor's ruin. Why not? I mean, you know, the fact that the contract is a bad deal doesn't mean the government is responsible for that. They're not representing when they put a contract out for bid. They solicit bids that the contract will be profitable, right? There's no case that says that. I agree, Judge, that the issue isn't necessarily that the contract needed to be profitable, but the government does have restrictions on its actions, the way it conducts the contract, the way it builds the contract, so that the contract can work. Here, you know, in a requirements-type contract, the limitations broadly are that the government has to act in good faith, but specifically, you know, they have to act in a way that does not avoid their contractual obligations, that they're not reassessing the balance of disadvantages and advantages on the parties, or in a way that creates undue risk of economic hardship for the contractor, and that's exactly what we have here, a situation where... Well, I mean, I don't know what case says that. Judge, technical assistance, international, corporate versus United States, the FedServe case is one of those. I read the board's opinion here to a certain degree. We have this theme of that MPG could have taken steps to reduce its damages and its harm, right? Like, it could have sourced locally. That it said it was going to source locally, and then ultimately, it never did. And also that it could have, with respect to the bagged salad requirement, I guess, it could have gone to the government earlier and said, hey, this just isn't going to work, this is not feasible, we can't do this. And so how do you respond to that kind of underlying theme? Well, Your Honor, in respect to the question of whether MPG-US was able to source locally, they were, to some extent. It wasn't entirely an import process from overseas, mainly from the United States. On the bagged salad question, the government knew that the prices of bagged salad were going to go up. The $38 million annual transportation subsidy was removed. The contract specified that the bagged salad had to be Fresh Express, which is an American company. So the only way that... That's not because you specified, you asked for Express. Yes, Your Honor, that's correct. The contract said pick somebody who's going to supply the bagged salad, and you picked that one. That's correct, Your Honor. But the assumption picking Fresh Express was that the contractor would be able to recoup its costs because this is a fixed-price contract. Just on terms of whether the contract can work, the contract only was novated to EKK on the one state and to Interharvest on the other. But the record shows that before the novation, both of them were performing the contract without any problems. So how can you say the contract didn't work? Well, Your Honor, the novated contractors, you know, the... I'm talking about the time period when those two, like apparently subs, took over the contract. And the record shows they took over the contract. That's correct. And had no problem performing. Judge, I can't really speak to whether they had problems performing. Well, that undercuts your theory that the contract can't work. Well, so many of the problems... It allowed for local sourcing of a bagged salad. And your client even went to one company sort of hoping at Hanasong in Korea. That's correct. Hoping to be able to get it done. And the problem was Hanasong, you picked the wrong guy. They couldn't get the 109 group to sign off on what they were doing. But there isn't any showing that local sourcing was unavailable. But when the contract was awarded... There's no showing that local sourcing is unavailable. And if local sourcing was available, then the cost of transporting is irrelevant. So the fact that you chose to continue, and also the contract provided, because the bagged salad was embargoed, the contract clearly provided as to any embargoed item, you could go to the government and say, hey, wait a second. I need a subsidy. I need something else. No evidence that you asked for that. So I found it hard to accept your argument that there was a commercial impracticability here. The problem, Judge, is the prices at the end. You know, the prices that the buyer, the government, was willing to pay. So... Let me just also... So I understand the way it worked. You signed onto a contract whereby each week the folks on the ground out there would decide what their requirements were going to be for that week. Yes, that's correct. So that was the adjustment of requirements. And you agreed that the person who's deciding what the requirements are going to be can take price into consideration. And they can either say, well, we're just not going to order any of that. Or they can say, if you'll lower the price, then we'll buy some. That's the contract you entered into. Plus, you agreed to have a undercut. The lower domestic price is even more than the contract on its face required. The contract initially said something like 15% was what we're looking for for undercut. That's right. You went up to 30%. So you said, we can do even better than that, right? And they were able to. MPG West was able to. And in many cases. There's no question about that. The board itself decided that the patron savings requirement, the market basket surveys, the requirements for MPG West to provide some type of savings were met. That's not an issue here on appeal. I think the real question, the real problem is that MPG West assumed, because that's what the contract dictated, that it could recover its costs because they were supposed to include all of its costs into the fixed prices. The problems arose when, during the weekly price review, the government would basically dictate the prices that they wanted to pay. Setting aside what the actual costs were, they were basically ignoring the fixed prices. They were supposedly worried about the end cost to the patron. That's exactly right. And they were granted the liberty to do that in the pricing provisions in the contract. Judge, there I would disagree. There's nothing specific in the contract. That's what that weekly price review criteria would be. That was solely an invention of the government, mid-performance. They created a framework for... You don't think the government, the contract didn't allow the government to have any say in the pricing of the product? The contract says that the government is able to determine what may be fair and reasonable. And I suggest that fair and reasonable cuts in both ways, Judge. MPG West, the contractor, came into this contract believing, because that's what the contract said, that it could charge its fixed prices so long as it met the patron's savings requirements. You're saying it should have been fair and reasonable to your client. To MPG West, yes. MPG West. But I agree that the contract does state that the government is able to review prices for fair and reasonable. It came into the contract believing that it was going to be able to locally source. That is to say, it was going to be able to meet the expectation and the hope of the government, which was the reason why the government felt it was fair to get rid of the transportation subsidy. So your client is negotiating and saying, boy, I'm telling you, with no transportation subsidy, if I have to transport all this stuff in the United States, including stuff like salad, which I might have to air transport, then it's going to be a tough sell. Because everybody knows that the price that the government's going to pay, it's to try to pass on to the patron. And your honor, I would submit that for the most part, MPG West was successful in delivering produce that was at a fair, reasonable price. Well, $10 million short, right? That's right. What was the total volume of sale over the period that they were in the contract? Total volume of sale while they were in the contract? That is in the record. I don't know. I'm not sure that that specific fact is in the record, Judge. So we don't even know whether you sold the estimated requirements numbers or not. Well, there's no question, Judge, that they were able to meet the requirements. No, but there's a schedule in the contract. This is weekly estimated requirements. You're not contending that you weren't able to sell that quantity under the contract, right? Your honor, I don't think there was any question that they were inadequately sourcing, I suppose. They weren't necessarily being criticized for the volume that they were able to provide to the government. The question again is what the government decided to buy at the prices that they were going to buy at. It's the pricing, not the quantity. Correct. Can you tell me what the evidence in the record is? I mean, you had said earlier that you agreed that MPG could have sourced some of the products locally. What evidence is there on whether that could have been done? Your honor, this was an issue that came up especially on MPG West's motion for reconsideration. It's something that the board emphasized. The board emphasized on two of the issues that you raised that MPG could have, and said it was going to source things locally, and then ultimately it never did. And that's where it ran into problems. So, you know, one of the things I was thinking about was, you know, could it have sourced locally? And so I'm looking for evidence on that. But it sounds like you could see that some things could have been. And they did, Judge. I mean, MPG West was able to source some locally. I can't say, and of course it certainly wasn't the case that they sourced everything locally. Otherwise, we wouldn't have the issues that we did. And then there were certain items such as the bagged salad that was not, it was not possible to source Fresh Express salad locally because it is American. But it was possible to provide bagged salad locally, just not Fresh Express? If there was going to be a modification in the contract that was accepted, and there was a whole process for approving items. So, you know, when the contract started, of course, both parties understood that the bagged salad requirement was going to be Fresh Express only. And while MPG West did try to potentially find a local source of bagged salad and get that approved, they ultimately couldn't get that. So with respect to bagged salad, your argument is that the price rejection of the bagged salad was unreasonable because the contract required that it come from the United States, I guess from Mexico, ultimately. And that what the government was doing is saying prices are unreasonable, even though the price is just allowed cost recovery and some profit. Yeah, that's exactly right, Judge. Was the government requiring, was the government barring local sourcing of bagged salad? Well, the government required that the bagged salad requirement was Fresh Express only. I understand if it could be locally sourced. You tried the locally sourced bagged salad, so it was permissible under the contract to locally source bagged salad. MPG West had to source Fresh Express only because that's what the contract required. Well, that's what you asked for. Yes, that was part of the list of approved sources. There was a list. But that's what the contract required. And then that's what the contract required. Could that source have gone locally? Could they have subbed to a local market? If DECA were to approve a locally sourced bagged salad. There was bagged salad available locally, and your contractor could have accessed that if it had found a source that would have been approved. Right? And the record shows that for at least a year, your successors were successful. We don't know whether they were getting it local or not, do we? Well, your honor, I think what the record will show is that... My point is, I think the argument that the contract required your client to import the bagged salad is not correct. Your client could have gone to a local source and bought it and supplied the kind, avoided the transportation cost. Only if that was approved, only if they would have... Well, no, but I mean, the fact that it wasn't approved, the person you chose didn't have a good manufacturing facility doesn't mean that others couldn't have done it. But what you're saying is the contract as written didn't allow that, right? That's correct, your honor. The contract specifically specified that Fresh Express was the only bagged salad. But it didn't prohibit Express from subbing to somebody locally. If they were able to go through the process. Yes, if they were able to find the right person. And your honor, to add some context to this. After the Department of Defense, Office of the Inspector General came in and ran their investigation, their audits. We know what happened in the end. The... Deca decided ultimately... Can I ask a question about the record? You're saying in your page 20 that there were no estimates for a bagged salad. And I want to ask about page 118. Can you look in the white... Page 118. 118. This is the... Page 118 of the J.A. Appendix APPX 118. It'll be in the white volume. I'm sorry. Volume 1. It's in the record, sir. It's in the white. Do you have the second volume? I have the second volume, Judge, yes. In the second volume. Do you have the first volume? Yeah. The first, it's in the first one. I'm just trying to ask whether or not this particular document, which shows estimated weekly amounts for a bagged salad. I'm questioning your statement in your brief that there were no estimates for a bagged salad. Okay. And I'm asking you to look at volume 1 of 2 of the joint appendix you filed. Your Honor, unfortunately, I don't have volume 2 or volume 1 up here. I'm sorry. I do have it back at the desk. Can I show you one? Why don't you grab it? See, that's... Do you have the Brady Council's table? It's page A118. Well, it just looked to me like it's estimates on bagged salad. Yes, it does. Just a note, just so you know, our rules do require the Council bring the appendices and other briefing materials to have them readily accessible. Do you want to give that to Council? Oh, thank you, Your Honor. And your question, Judge, was? Yeah, it looked to me like that was an estimate that was in the solicitation for an estimate of bagged salad needs. It's very similar to where we have otherwise in the record for the estimates. Your Honor, I think I'd agree that these are estimates for the various types of bagged salads. Well, in your blue brief, you had asserted that there were no such estimates. Page 16 of your blue brief. Solicitation didn't provide estimates any non-court-offered bagged salad products. Okay, I think we're out of time. We'll give you two minutes for rebuttal. Okay, thank you, Your Honors. Can I have that back, please? May I have a brush? No, do you have a brush? No. Thank you. Good morning, Your Honors. May it please the Court? This is a highly fact-intensive case where the Court need not go... Okay, so let's talk for a moment about bagged salad, all right? They say that the contract required them to ship the bagged salad from the United States. Do you agree with that? Because the contractor incorporated their preferred vendor in the United States, I think it's fair to say that the contract did require that, but that was because after reading through the solicitation requirements and proposing to provide bagged salads on-site at the commissaries at a reasonable price, they chose that particular vendor, and that's why it was incorporated into the contract. So if that's true, then it seems to me that the price that the government found to be unreasonable, assuming that their allegation is correct, that that was cost plus profit, rejecting that as an unreasonable price seems problematic, right? Just on the bagged salad, that's all I'm talking about right now. Well, a reasonable price doesn't mean whatever is necessary to reimburse their costs. This was not a cost reimbursement contract. It was a fixed price contract. A reasonable price would generally mean a price that a consumer might look at and think that's a reasonable price to pay for this product. The business choices made by MTG West could cause those prices to go as high as you can imagine, and it wouldn't be reasonable just because it's necessary to cover their costs. It's standard in a fixed price contract that the contractor is responsible for keeping its costs low in order to make a profit off the contract based on the proposal that it made. In this case, it knew what the prices of bagged salads had been in the past. I'm sure it had some idea of the market conditions and what bagged salad was being sold for locally. It can't select a provider in the United States, knowing that the government was not going to subsidize those transportation costs, incorporate those costs in the price, have a price that's two or three times higher than what people had been paying in the past, and call that reasonable just because it's necessary to cover its costs. Okay, but my difficulty is the government's rejecting these prices as unreasonable, but let's assume, hypothetically, and I know this hasn't been litigated, that there's no way that they could have performed the contract as written, that is to bring the bagged salad from the United States at the prices that the government demanded. Why wouldn't that be an unreasonable determination by the government as to the price? Well, if the contract made it impossible for the contractor to perform in a way that was profitable, that's an issue they should have raised at the time of a solicitation. What they're bringing here is a deficient specifications claim, and as the board noted, their argument is really more along the lines... That may be one of the claims, but the claim I'm talking about is the government's rejecting a bagged salad because it's priced too high. They're saying this is not a reasonable price, and what I'm saying is if the government's action in that respect was unreasonable in the sense that nobody could have performed the contract at the prices that the government wanted, why doesn't that create liability? Because the contract specifically states that the government will monitor for fair and reasonable prices, and MPG had alternatives available to it. As soon as MPG said that it was having difficulty with the bagged salad requirement and it would like that requirement to be dropped from the contract, DECA was willing to do so. It could have raised that issue earlier. It could have raised that issue at the point of the solicitation, but... Is that because it was an embargoed item? I'm sorry? Didn't the contract say with regard to embargoed items, if they had difficulty satisfying that, they go to the government? Yes, precisely. Substitute? Yes, the solicitation and the contract made clear that the overall scheme was the contractor would source as much as possible locally. It could potentially bring embargoed items in through the status of forces agreement, but rather than do that, the contract provided that it could inform DECA of any... It actually said that the contractor shall provide a list of embargoed items, and MPG never did that. I'm sorry, what does that have to do with bagged salad? Because if it was impossible... Bagged salad was embargoed. If it was impossible for the contractor to source an item locally, the contract suggested that it go to DECA to think about whether it would reallocate the items being asked for. The idea wasn't to force the contractor to get a... Okay, but I'm not understanding what's going on here, because the contract said that bagged salad couldn't be sourced locally, that it had to be brought from the United States, unlike all the other items in the contract. The contractor specified a vendor because that was what they had proposed. Right. It was their choice to propose to use a vendor that could not result in unreasonable prices. The fact that DECA took it at its word that it could source from that provider and then provide the salads at reasonable prices shouldn't then fall on DECA when it was actually making an unreasonable choice to import from the United States an item that might be gotten more cheap locally and expect patrons to pay... That's what the contract required. It is what the contract required, and as the board explained, the fact that the contract... that portion of the contract couldn't be completed profitably is not a deficient specification. Did the contract provide that the subcontractor who they picked had to ship from the United States, or just that they had to use him? It didn't specify that they had to ship from the United States, but it specified the United States company, that they did not... No, have the nature of the relationship. I was of the view, and I think your adversary agreed, that Express could have subcontracted with a local provider. Yes, I don't think anything in the contract would have prevented that. The contract simply said that they would source from... So that the bag salad didn't actually have to come from the United States? No, they just had to do it through Fresh Express. You told me earlier it did have to come from the United States. You told me earlier it had to come from the United States. That was the contract requirement. No, the contract required it to come through Fresh Express. I'm sorry if I misspoke. Fresh Express is a United States company, and MPG West is saying that that made it impossible for it to source elsewhere. But nothing in the contract prevents it from doing so. And the specification of using Fresh Express in the first place, that was MPG's business choice. And to the extent that the contract did require them to ship, if there was no other way to follow the contract requirements other than shipping from the United States, then that would have been a patent defect at the time of the contract, which means they can't now prevail on a defective specification claim. But that's not the theory. The theory is that the government rejected these bag salads as being unreasonably priced when they had to be priced that way to comply with the contract. That's the theory. Right, but... Is it your concession that they had to be priced that way, or that was their choice? If they had alternatives, they went to a local bag salad supplier and tried to get him approved. They couldn't get him approved because he had something wrong with his facility. Certainly suggested that the government was willing to accept locally sourced bag salad. Yes, precisely. So ideally, they would have sourced locally, even once they had selected Fresh Express as their provider. Was this issue addressed at all before the board, whether they had to ship the salad from the United States, the bag salad? Not especially, I don't believe. Well, the board found... The board definitely considered whether MPG had made any attempts to source any alternative attempts because that would be necessary for a showing of commercial impracticability. And the board found that MPG had provided no evidence of seeking out any alternatives. The history of all of the discussions with potential local suppliers of bagged lettuce is in the record. Yes. There was abundant discussion of that possibility. Let's assume for the moment, put aside this potential factual dispute. Let's assume that the contract required them to ship from the United States, okay? Let's just assume that. Why isn't the government's refusal to accept that product at the cost that was necessary to make that feasible a violation of the contract? Well, MPG is arguing that it was a violation of the duty of good faith, but the contract provided that the government... It's a question of... It's not an unreasonable price. The government says it's not a reasonable price. It isn't an unreasonable price because that's the price you'd have to charge to do it. Respectfully, Your Honor, that isn't the only question for whether something is reasonable. A reasonable price can also mean what a consumer is reasonably expected to pay. If that were true, if the government had to pay whatever was necessary to reimburse their costs, that would result in it buying a bunch of produce that it knows is never going to sell at the established prices that are all going to go to waste. The alternative would be for MPG to follow the contractual provision of telling DECA that there were certain products that were unavailable locally so that they could then consider reallocating the product assortment or making a change, which is exactly what they did as soon as MPG West brought this issue to their attention. Didn't the record show that the contractor did not reduce its profit margins? Right, another option... In terms of whether they could cover their costs, the presiding judge's question, if they're unwilling to reduce their profit margin, we don't know whether they were unable to make their costs, right? Yes, there were a series of business decisions went into this. Yes, contractors will do exactly that. If they have higher costs on one item than another, they might... I thought the board made an expressive fact finding that throughout, MPG was unwilling to reduce its profit margin. Yes, the board did make that finding. In other words, like the bagged salad could be a loss later. Yes, exactly, and MPG chose not to do that. And it's not as though MPG sourced everything else locally and just imported these bagged salads. It was importing these bagged salads in the same manner that it was importing most of its fresh fruits and vegetables to the United States. So this idea that a defective specification in the contract forced it to do, though, doesn't really withstand scrutiny because it was just a choice... We keep talking about defective specifications. That may be one theory, and that may be a bad theory, but my understanding is they have an alternative theory, is the government's rejection of the bagged salad as being unreasonably priced was not in compliance with the contract because the contract required them to incur these costs to ship it from the United States, and that rejecting it as being too expensive under those circumstances when they were doing exactly what the contract required, according to them, is not something that the government could properly do. That's the theory. Yes, I understand that theory, but it essentially... The board adjudicated. I didn't see any sign that the board was presented with that specific theory because we don't have a finding from the board that the contract required the goods to come from the United States as opposed to coming from a United States company, and the record is a plethora of evidence of the contractor trying to find a local source to satisfy the terms of the contract. Yes, so to the extent... If it's true that the contract required the stuff to come to the United States, right, then when he supplied the goods from a local source, he would be in breach of the contract under the theory that's being discussed. Yes, I think part of the issue here is that MPG West did make two arguments before the board. The only argument... The argument specific to bagged salads was a defective specifications requirement. It also made an argument that the government was not acting in good faith by manipulating its requirements over the life of the contract, but that wasn't a specific argument to the bagged salad, and that argument doesn't hold up because the government was not changing its requirements. It wasn't saying that actually it didn't need this or needed more of that. It was simply saying the contract allows us to reject unreasonable prices, and that's what we're going to do. Okay, but I thought one of their theories was that the government couldn't properly reject these items as being unreasonable, unreasonably priced. Yes, and that assumes that the government was essentially obligated to compensate MPG's costs regardless of what those costs were or whether there were alternatives, and in this case, the board found that it was MPG's business decisions, not the government's treatment of MPG that led... So they did argue that the government improperly rejected the bagged salad as being unreasonably priced. Well, it argued that the government improperly rejected various prices as being unreasonably priced. That argument wasn't focused particularly on the bagged salads, so it would... Well, it included the bagged salad. Yes, it did. Can I ask you another question? You mentioned earlier it's a very fact-specific record. I mean, it's a very fact-specific case, so I've got two specific questions for you. One is you said earlier that once MPG came to DECA and said, this bagged salad requirement is a problem, that DECA removed that requirement. There is some suggestion in the record, perhaps, that actually maybe the bagged salad requirement was complained about in 2015 and it wasn't removed until 2017. So what I want to know is where is your evident... Where in the record am I to understand what you say to be the facts? Okay. I mean, it looks like there are pieces of testimony from different witnesses as to what exactly happened with the bagged salad. I mean, you said a very specific statement. So what evidence do you rely on for this specific statement that once MPG complained about it, DECA removed it? What I have in front of me is the findings by the board based on the testimony of Director Joseph Ju primarily, but I'm not sure of the exact dates of when MPG first complained about the bagged salad requirement as opposed to when it was removed. Do you want to give me the site that you're relying on for the board's findings? Sure, at appendix 16. Is there a particular paragraph? Yes, at 117 and 118, the board found first that MPG West approached DECA and asked if DECA could take over the bagged salad program and then that DECA Director Joseph Ju testified that DECA agreed to remove bagged salads from the contracts and reinstate second destination transportation. My understanding was that was in response to MPG West's request and there wasn't some delay of over a year, for instance, but I don't have those dates at my fingertips, but I should be able to find them in the testimony if you'd like. If you think it's supported by that testimony that's on paragraph 117 and 118, I can probably find it so long as it's in the appendix. Let me ask you something else. The other thing is, do you think the board expressly found whether or not certain or all or some of the products requested, the fresh fruits and vegetables, could have been locally sourced? I mean, they seem there's definitely a finding by the board that MPG created its own problem by not providing local produce, right? But what evidence is there in the record that MPG could have purchased items locally? The problem with the record is that MPG didn't really make that effort. MPG, after the contract performance began, even though it acknowledged that it was having trouble with the startup period, it expressed optimism. It said it had a local sourcing plan and that it would be able to source more than 90 out of a list of 100 items that it provided locally. It had a phase-in process, a timeline that it worked out, but then it never followed through on that plan. And the lack of evidence in the record just goes to undermine MPG West. What about the Inspector General's report? Does that suggest that things could not have been provided locally? The Inspector General's report, which of course the board fully considered and ultimately didn't find persuasive on any of these claims, at most it suggests that DECA could have been more thorough up front about ensuring that they were locally sourced produce. It certainly doesn't do anything to show affirmatively that that produce was not available locally. Largely what the report, and I'm mostly talking about the market research report, mostly what it did is it looked at the prices before and after and found that the prices had gone up and assumed that that was a result in the change of contract. But of course it could equally well be true that it was a result of the choices made by contractors to continue importing when that wasn't necessary. So what does the record show about the ability to source the bagged salad locally? Well, the record shows that once it was novated to the subcontractors, they were able to perform successfully. And it shows... Do you know about in the time period before novation? It shows that... In about almost a year in one case? Yes, basically what it shows is that MPG West believed it could source locally. No, no, we're talking about bagged salad, not other stuff. The record doesn't affirmatively show that bagged salad was available locally. It just shows that MPG West did not make an effort to find alternatives to what it considered to be. It identified a specific company that they said could supply the goods and they took it to the K109 people, right? Yes. So that suggests that there was an identified possible local source that was proposed to the safety people and the safety people rejected that particular source, right? Yes. That's the name of the company was... Yes, and to be fair, I don't think the record is clear that there's a specific alternative provider who would have been approved. But the issue is that MPG West didn't seem to make those efforts. And yes, the bagged salad requirement is arguably posed an additional difficulty because Fresh Express was specifically identified in the contract. But MPG West didn't even bother to follow through on that local sourcing plan for the other fresh fruits and vegetables. Why does a country embargo a particular product? Bagged salad was embargoed in Japan and Korea, or at least Korea, I believe. And they make a point of that. It would seem that perhaps they're protecting their local industry. Perhaps. I'm not sure what their motivation behind the embargoes in this case was. But there's certainly no evidence in the record that bagged salad was unavailable in the local market. No, there's no evidence that it was unavailable in the local market. And the burden was on MPG West to seek out those alternatives rather than to simply incur high costs resulting in prices that were... They had... The contract required them to buy it from a specific supplier located in the United States. Yes, a supplier... You're saying that they had an obligation to go to their supplier and suggest that that supplier buy its bagged salad someplace else? Or they could have selected a supplier that could have provided salads at a reasonable price. The contract required a particular supplier, not just any supplier. Right, because they had chosen that supplier. That's... Nonetheless, the government agreed to that. That's what the contract said. Yes, and the contract said that they would then provide those salads at a reasonable price. And that's the issue. They couldn't do so. And they're asking the government to incur those costs rather than having chosen a supplier that could have enabled them to carry out their requirements successfully. Do you know whether on the list from which they selected Express, there were local suppliers on that list? I do not... I tried to find the list and I couldn't find it as of the effective date. I'm not aware that the list included any local suppliers. The current list do include local buyers. I just didn't know what the old ones did. I'm not sure what other options were on the list. MPG West selected this provider from the United States. But MPG West always knew that the contract required it to ultimately propose reasonable prices. And that's the issue here. They thought that doubling or tripling the price of bagged salad was reasonable so long as it reflected their costs. But their cost was the result of their own business choices, including their choice of a provider. Okay, I think we're out of time. Thank you. Mr. Haraguchi, you have two minutes. May it please the Court, Your Honor. I just want to address a couple of issues that you spoke to counsel with. There seems to be a lot of discussion about the bagged salad and whether that bagged salad could have been procured, I suppose, locally in Korea and Japan. There isn't anything in the record that suggested that was even a possibility. What we do know is that they were required to source. If you went to Anason and had them take some bagged salad down to the testing people and they rejected it, certainly suggests that there was some evidence in the record that it was available. Judge, I agree that if they were able to find a different bagged salad, that would be able to pass through the food process. But the question was, is it available? That's the first question. Second question is whether or not you find it and you can get it passed by the certified people. Yes, I think that's correct, Judge. So you do not deny that it was available in the marketplace? Judge, I'm not sure I entirely understand the question. If you're asking whether it was possible for NPG West to find fresh express bagged salad locally in Korea and Japan and then source them as opposed to shipping them from the United States, I'm not sure that was possible. There's nothing in the record to suggest that it was. And there was in the record that you tried and failed because your supplier was rejected. The Korean bagged salad supplier. Anason was rejected. Right, the non-fresh express company. I do want to address the pricing of the bagged salads though, because there's a lot of question of what does a fixed price mean and how DECA was deciding the prices to buy. One thing that we haven't really spoken too much about is the... You had a profit margin in your price, right? And how DECA was basically dictating the prices based on political pressure. Right, but in your price was a profit margin that you never lowered once you realized that your costs were higher. Yes, Judge. And NPGOS, of course, was required to include all those costs into its fixed prices. Your argument was you can't even recover your costs at the prices the government set. That's correct, Judge. DECA was not even basing its prices. We talk about a reasonable price. Those prices, and I think DECA would concede some testimony here from the Deputy Director of Acquisition Manager, Richard Dieter. He acknowledges that the prices may be competitive with chainsaw averages, lower than the commercial market. But his problem was he was getting a lot of pressure from the press, from military times, from bloggers, from Facebook. And it was those influences that dictated the decision for DECA to artificially lower prices and basically force NBG to sell. What per se is wrong with that? I'm just wondering because it was... I would assume that's the consumers that are generating that and saying, boy, this is just too much money for a family in the military to be able to afford these products. Your Honor, I fully sympathize with the patrons and how, you know, their expectation was... I'm just having a hard time understanding why it matters if it was political or if it was because of what a reasonable amount would be for consumers. I'm just... I'm having a hard time with that. I understand the rest of your argument. Well, because if those prices were competitive with the commercial market or even lower than... Is there any evidence that it was competitive with the market of what was available in the countries where they were located? Judge, I'm looking at... In our opening brief, page 55, it's a reference to appendix pages 453, 454. This is testimony of Mr. Richard Dieter, who was the Deputy Director of Acquisition Management. And he suggests that the prices may be competitive with chain store averages lower than the commercial market, but it was the bad press, the attention that DECA was getting that drove their pricing decisions. So... What about the requirement or goal of having prices be 20% to 30% lower for those who were on base? So the... Judge, you're referring to the patron savings requirement. In South Korea, that was 34%. In Japan, it was 30%. That refers to 35%, what they call high... High volume core items. The bagged salad didn't fall on that list. Is that what you're going to tell me? Well, what the board found is that that was never an issue with NBG. I mean, NBG was making the patron savings requirement, which was their obligation... The bagged salad wasn't in that category. That's correct. The bagged salad was not part of the high volume core items and was not part of the patron savings. Okay. I think we're out of time. Okay. Your Honor, thank you so much. I think both counts. Your case is submitted.